# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ROBERT LIVINGSTON, JR.,

      Petitioner,

      v.

JEFFREY CHIESA, et al.,

      Respondents.

Civil Action No. 12-5450 (JBS)

**OPINION**

**APPEARANCES**:

    ROBERT LIVINGSTON, JR., 208168B
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 07101
        *Petitioner Pro Se*

    MERCER COUNTY PROSECUTOR
       by: Daniel A. Matos, Esq.
    P.O. Box 8068
    Trenton, New Jersey 08650
        *Attorneys for Respondents*

**SIMANDLE, Chief Judge**[1]

    Robert Livingston, Jr., filed a Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of

conviction filed in the Superior Court of New Jersey, Law

Division, Mercer County, on February 6, 1998, and amended on

February 23, 2001, after a jury found him guilty of second-

---

[1] This case was reassigned to the undersigned following the death
of the Hon. Dickinson R. Debevoise in August, 2015.

degree passion/provocation manslaughter, first-degree felony murder, first-degree robbery, third-degree possession of a baseball bat with a purpose to use it unlawfully, and fourth-degree unlawful possession of a baseball bat under circumstances not manifestly appropriate for its lawful use.

The State filed an Answer with the record and, although given 90 days to do so, Livingston did not file a timely reply. Eight after the time to file a reply had expired, Livingston filed a motion for an order granting him an additional 90 days to file a merits brief.  Attached to this motion were certain documents from the state court record which the State had not been able to locate.  Because the motion was filed eight months after the reply was due and because none of the grounds presented in the Petition raise close questions under 28 U.S.C. § 2254(d), the Court will deny the motion to extend the time to file a reply.  After carefully reviewing the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

**I.   BACKGROUND**

A.   <u>The Crime</u>

Livingston challenges a sentence of life in prison with a 30-year period of parole ineligibility imposed after a jury found him guilty of the second-degree passion/provocation manslaughter of Morris Lewis, first-degree felony murder, first-

degree robbery, third-degree possession of a baseball bat with a purpose to use it unlawfully, and fourth-degree unlawful possession of a baseball bat under circumstances not manifestly appropriate for its lawful use.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Livingston has not attempted to rebut the factual findings of the New Jersey courts, this Court will rely on those findings.  The Appellate Division found the following facts:

> The underlying criminal episode occurred around 3:30 a.m. on January 12, 1995, when Morris Lewis, A/K/A "Snoop," was beaten to death by defendant in the home where defendant was residing.  Defendant struck Snoop, who was unarmed, numerous times in the head with a baseball bat, causing his death.  Blood splatter analysis indicated the victim had been prostrate on the floor during the attack.  The State's proofs indicated that defendant was familiar with Snoop, allowed him to spend the night at his residence where an argument and ultimately a violent confrontation ensued during which defendant robbed Snoop of money and eventually killed him.
>
> At trial, defendant admitted killing the victim by repeatedly striking him on the head with a baseball bat, but attempted to justify the homicide as an act of self-defense.  Although he admitted taking the victim's money, he claimed that he did so only as an afterthought.  Although some elements of his account changed from his initial statements to the police, defendant testified basically that he allowed Snoop to stay at his residence the night before, but an argument ensued the next morning concerning what time Snoop was to leave the house, and defendant therefore refused Snoop's request to stay there another night.

Although they were seen together on the street later
that night, at approximately 12:45 a.m., less than
three hours before the fatal attack, defendant claimed
the victim appeared at his door sometime later
requesting to stay there and when denied, he made
threats against defendant's property, prompting
defendant to call 911.  Defendant abandoned his
attempt to call the police, however, and told the
operator he had dialed mistakenly.  Defendant claimed
Snoop then left his residence and did not return until
3:30 a.m., when defendant was awakened by what he
believed at first to be a burglar, jumped from where
he was sleeping on the couch, and hit the individual
with a bat.  Defendant turned on the light and
recognized the individual as Snoop, who then began
fighting with defendant.  Defendant claimed he hit
Snoop until he fell onto the floor and then removed
his clothes to see if he had any money, feeling that
since Snoop came to rob him, it was fair for him to
take money from Snoop.  Defendant further claimed that
after he took money from Snoop's underpants, he called
911 and dressed the victim before the police arrived.

State v. Livingston, 2011 WL 5828502 at *1 (N.J. Super. Ct.,

App. Div., Nov. 21, 2011), certif. denied, 210 N.J. 218 (2011)

(table).

## B.   The State Court Proceedings

In March 1995, a grand jury sitting in the Superior Court

of New Jersey, Law Division, Mercer County, indicted Livingston

for first-degree aggravated manslaughter and first-degree armed

robbery.  After Livingston rejected a plea agreement, the State

presented the case to a second grand jury, which indicted

Livingston in a superseding indictment on charges of first-

degree murder, first-degree felony murder, two counts of first-

degree robbery, third-degree possession of a baseball bat for an

unlawful purpose, and fourth-degree unlawful possession of a
baseball bat.  Livingston filed a motion to dismiss the
superseding indictment, arguing that because the evidence
adduced at both grand jury presentations was almost identical,
the second indictment should be dismissed on the ground of
prosecutorial vindictiveness.  The trial judge denied the motion
in an order filed on June 13, 1997, with an explanatory opinion
dated May 1, 1997.  (ECF No. 17-4.)

Livingston then filed a motion to suppress his second
statement taken by Detective Robert Tedder on January 12, 1997,
arguing that Tedder had improperly failed to re-advise
Livingston of his rights under Miranda v. Arizona, 384 U.S. 436
(1966), prior to taking the statement.  After conducting a
hearing on September 30, and October 1, 1997, the trial judge
denied the motion in an opinion dated October 6, 1997.  (ECF No.
17-5.)

Livingston was tried before a jury.  On October 24, 1997,
the jury found him not guilty of first-degree murder, but found
him guilty of the lesser-included offense of passion/provocation
manslaughter, as well as felony murder, two counts of first-
degree robbery, and two weapons offenses.  Livingston filed a
motion for judgment of acquittal as to all counts or, in the
alternative, for a new trial.  The trial court denied the motion

by order and accompanying opinion filed March 11, 1998. (ECF
No. 17-8.)

On February 6, 1998, the trial court imposed an aggregate
sentence of life in prison with a 30-year period of parole
ineligibility. (ECF No. 17-10.) Livingston appealed, and on
October 13, 2000, the Appellate Division affirmed the conviction
and remanded for correction of the judgment to reflect merger of
the passion/provocation manslaughter and robbery convictions
with the felony murder conviction. See State v. Livingston,
Docket No. A-4886-97T2 slip op. (N.J. Super. Ct., App. Div.,
Oct. 13, 2000) (ECF No. 1-1.) On February 23, 2001, the trial
judge amended the judgment of conviction to comply with the
Appellate Division's directive. On March 14, 2001, the New
Jersey Supreme Court denied certification. See State v.
Livingston, 167 N.J. 634 (2001) (table).

Livingston filed a pro se petition for post-conviction
relief in April, 2001, and an amended post-conviction relief
petition in June, 2001. The trial court denied post-conviction
relief in an opinion and order filed on February 1, 2010.
Livingston appealed, and on November 21, 2011, the Appellate
Division affirmed. See State v. Livingston, 2011 WL 5828502
(N.J. Super. Ct., App. Div., Nov. 21, 2011). On May 3, 2012,
the New Jersey Supreme Court denied certification. See State v.
Livingston, 210 N.J. 218 (2012) (table).

C.  Procedural History of § 2254 Petition

On August 21, 2012, Livingston signed his Petition for a Writ of Habeas Corpus and handed it to prison officials for mailing to the Clerk.  (ECF No. 1.)  The Petition raises the following grounds:[2]

> Ground One:  THE SECOND STATEMENT PROVIDED BY THE DEFENDANT TO THE POLICE ON JANUARY 12, 1995, SHOULD NOT HAVE BEEN ADMITTED AS IT WAS UNLAWFULLY OBTAINED BY THE STATE IN VIOLATION OF MIRANDA V. ARIZONA.

> Ground Two:  THE PROSECUTOR'S WRONGFUL WITHHOLDING OF MORRIS LEWIS' CRIMINAL RECORD DENIED THE DEFENDANT A FAIR TRIAL.

> Ground Three:  THE DEFENDANT'S FELONY MURDER CONVICTION MUST BE OVERTURNED BECAUSE THE COURT FAILED TO CHARGE[] THE JURY PROPERLY ON THE CAUSATION ELEMENT OF FELONY MURDER[.]  (A) THE JURY CHARGE WAS NOT ACCURATE [AND] (B) THE JURY CHARGE WAS CONFUSING.

> Ground Four:  THE DEFENDANT'S FELONY MURDER CONVICTION MUST BE OVERTURNED BECAUSE THE STATE FAILED TO PROVE THAT THE DEATH OCCURRED IN THE COURSE OF A FELONY[.] (A) THE STATE FAILED TO PROVE THE PREDICATE OFFENSE OF ROBBERY BEYOND A REASONABLE DOUBT [AND] (B) THE STATE FAILED TO PROVE THAT THE KILLING OCCURRED IN THE COURS[E] OF A ROBBERY.

> Ground Five:  THE DEFENDANT'S CONVICTIONS ON FELONY MURDER AND PASSION PROVOKED MANSLAUGHTER MUST BE OVERTURNED BECAUSE THE COURT'S JURY CHARGE ON IMPERFECT SELF DEFENSE WAS HOPELESSLY CONFUSING AND PREVENTED THE JURY FROM PROPERLY CONSIDERING THE SIGNIFICANCE OF THE FACT THAT THE DEFENDANT'S ACTIONS OCCURRED IN HIS OWN HOME.

---

[2] The Court notified Livingston of his rights to amend the Petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and he declined to do so.  (ECF Nos. 2, 3.)

Ground Six:  THE DEFENDANT'S CONVICTION[] ON FELONY
MURDER WAS INCONSISTENT WITH THE JURY'S FINDING OF
PASSION PROVOCATION MANSLAUGHTER, AND THE
INCONSISTENCY WARRANTS REVERSAL OF THE FELONY MURDER
CONVICTION.

Ground Seven:  THE TRIAL COURT'S FAILURE TO INSTRUCT
THE JURY CONCERNING THE STATE'S SPECULATION IN ITS
CLOSING ARGUMENT THAT THE DEFENDANT MAY HAVE HAD A
DISPUTE ABOUT DRUGS WITH THE DECEDENT CONSTITUTED
REVERSIBLE ERROR.

Ground Eight:  DEFENDANT'S MOTION TO DISMISS THE
SUPERSEDING INDICTMENT SHOULD HAVE BEEN GRANTED AND
THE TRIAL COURT'S FAILURE TO GRANT THE MOTION REQUIRES
THAT DEFENDANT'S SUBSEQUENT CONVICTIONS BE REVERSED.

Ground Nine:  THE STATE FAILED TO PROVE BEYOND A
REASONABLE DOUBT THE ELEMENTS OF THE WEAPONS
OFFENSES[.] THEREFORE, THE TRIAL COURT'S DENIAL OF THE
DEFENDANT'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL
ON COUNTS FIVE AND SIX CONSTITUTED PLAIN ERROR, AND
SHOULD BE REVERSED.

Ground Ten:  THE TRIAL COURT COMMITTED REVERSIBLE
ERROR BY REFUSING TO PERMIT THE DEFENSE TO PLACE IN
EVIDENCE THE FACT THAT THE STATE ORIGINALLY DID NOT
CHARGE THE DEFENDANT WITH MURDER AND THAT IT TOOK THE
STATE NEARLY TWO YEARS TO DECIDE TO BRING THESE
CHARGES AGAINST THE DEFENDANT.

Ground Eleven:  THE INABILITY OF THE DEFENDANT TO
PRESENT MEDICAL TESTIMONY CONCERNING HIS PHYSICAL
CONDITION PREJUDICED HIS CASE.

Ground Twelve:  BECAUSE TRIAL COUNSEL PROVIDED
INEFFECTIVE ASSISTANCE OF COUNSEL, AND BECAUSE THE
PETITIONER WAS PREJUDICED THEREBY, THE COURT SHOULD
GRANT HIS MOTION FOR POST CONVICTION RELIEF; IN THE
ALTERNATIVE, BECAUSE THE PETITIONER HAS PRESENTED AT
LEAST PRIMA FACIE PROOF THAT HE HAD BEEN DEPRIVED OF
THE EFFECTIVE ASSISTANCE OF COUNSEL, THE COURT SHOULD
GRANT HIM AN EVIDENTIARY HEARING ON THIS ISSUE.

Ground Thirteen:  THE PROSECUTOR ENGAGED IN
MISCONDUCT.

(ECF No 1 at 7, 8, 10, 13, 15, 17, 18, 20, 22, 24, 25, 27, 30.)

The State filed an Answer and, although given 90 days to do so, Livingston did not file a timely reply.  (ECF No. 17.) Eight months after the time to file a reply expired, Livingston filed a motion for a 90-day extension to file a reply.

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court adjudicated petitioner's federal claim on the merits,[3] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United

---

[3] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  See Pinholster, 131 S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision.  Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are

materially indistinguishable from a decision of th[e Supreme]
Court and nevertheless arrives at a [different] result."
Williams, 529 U.S. at 405-06.  Under the "'unreasonable
application' clause of § 2254(d)(1), a federal habeas court may
grant the writ if the state court identifies the correct
governing legal principle from th[e Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  Id., 529 U.S. at 413.

    Where a petitioner seeks habeas relief pursuant to §
2254(d)(2) on the basis of an erroneous factual determination of
the state court, two provisions of the AEDPA necessarily apply.
First, the AEDPA provides that "a determination of a factual
issue made by a State court shall be presumed to be correct
[and] [t]he applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence."
29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231,
240 (2005).  Second, the AEDPA precludes habeas relief unless
the adjudication of the claim "resulted in a decision that was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."  28
U.S.C. § 2254(d)(2).

_____

## III.  DISCUSSION

A.  Miranda Claim (Ground One)

In Ground One, Livingston claims that the admission of the second written statement he gave to the police on January 12, 1995, violated his right to remain silent because the police did not re-notify him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), before he gave the statement and the second statement differed from his first statement.  As factual support, Livingston asserts that, although he received the Miranda warnings prior to giving his first statement, the police were required to provide the warnings again before taking the second statement because, by the time he gave the second statement, the police had obtained additional information which caused the police to view the killing as a crime instead of an act of self defense.

Livingston raised the Miranda claim before the trial court in a motion to suppress, which the trial court denied, and on direct appeal from the judgment of conviction.  The Appellate Division noted that, once a suspect has been advised of his Miranda rights, no repetition is required, and affirmed on this ground substantially for the reasons expressed in the trial court's opinion.  This Court will, therefore, consider the trial judge's findings of fact and rationale for denying the motion to suppress.

After conducting a suppression hearing, the trial judge found that, on the date of the incident, Livingston received Miranda warnings and voluntarily waived his rights.  (ECF No. 17-5.)  The trial court found that, five minutes after arriving on the scene and prior to questioning Livingston, the patrolman read Livingston his rights from a card the officer kept in his pocket; Livingston signified that he understood his rights and agreed to speak with the officer.  Id. at p. 6-7.  Detective Tedder took Livingston to the police station, arriving at about 6:20 a.m., and prepared a Miranda form.  Livingston read the form out loud, indicated that he understood his rights, and signed the form before giving a typed and signed statement. Detective Tedder then left the room, spoke with two senior officers, and learned new information indicating that Livingston was acquainted with Lewis.  Because Livingston had not told the police that he knew Lewis, Tedder confronted Livingston with this information and prepared a typewritten addendum to his written statement.  The trial court found that, although Tedder did not read the Miranda rights again, Tedder "did reference the Miranda rights that [Livingston] received earlier."  Id. at 4. The trial court rejected the suppression motion as follows:

> The time lapse between the recording of the first statement and the typing of the addendum was approximately 45 minutes.  Defendant asserts that because of the passage of time between signing the first statement and commencing the typing of the

addendum, in addition to the change in his status, from victim to suspect, he was entitled to be re-advised of his rights.

*          *          *

Defendant waived his rights two times; once when he agreed to talk to patrolman Civale at the scene of the incident, and once before he made a statement to Detective Tedder.  During the taking of his whole statement, parts one and two, defendant was not subject to any coercive tactics which would render his waiver involuntary.  Defendant Livingston was offered food, cigarettes and coffee.  He was permitted to use the facilities as needed.  Defendant Livingston never requested to speak to an attorney or family member and never demonstrated any reluctance to speak with the police.

The time that elapsed between the first and second statement was used for investigative purposes including continuing the oral interview of that defendant and only amounted to 45 minutes.  The defendant has 4 years of college education at the University of South Carolina.

Considering all of the factors this court finds that Defendant Livingston did knowingly, voluntarily and intelligently waive his Miranda rights.  The waiver applies to the oral statements at the scene, as well as oral statements at Police Headquarters and the contents of the statement and the addendum.  This Court considers both parts of the statement to be part and parcel of the same transaction, thus admissible pursuant to defendant's waiver of his rights as memorialized in writing on the Miranda form signed by defendant on January 12, 1995.

(ECF No. 17-5 at 8-9.)

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-

14

incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).  In

Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that

"without proper safeguards the process of in-custody

interrogation . . . contains inherently compelling pressures

which work to undermine the individual's will to resist and to

compel him to speak where he would not otherwise do so freely."

384 U.S. at 467.   When police ask questions of a suspect in

custody without administering the required warnings, Miranda

dictates that the answers received be presumed compelled and

that they be excluded from evidence at trial in the State's case

in chief.  See Oregon v. Elstad, 470 U.S. 298, 317 (1985).

Thus, a confession taken during a custodial interrogation

without the provision of Miranda warnings violates the privilege

against self-incrimination.  See Thompson v. Keohane, 516 U.S.

99 (1995).  "To safeguard the uncounseled individual's Fifth

Amendment privilege against self-incrimination, the Miranda

Court held, suspects interrogated while in police custody must

be told that they have a right to remain silent, that anything

they say may be used against them in court, and that they are

entitled to the presence of an attorney, either retained or

appointed, at the interrogation." Thompson, 516 U.S. at 107;

see also Miranda, 384 U.S. at 479.

The Miranda Court emphasized that "[t]he defendant may

waive effectuation of these rights, provided the waiver is made

voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. In Berghuis v. Thompkins, 560 U.S. 370 (2010), the Supreme Court outlined its precedent on the waiver of Miranda rights:

> The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Berghuis, 560 U.S. at 382-83 (citations and internal quotation marks omitted).

The Berghuis Court emphasized that the State may establish waiver by a preponderance of the evidence, Berghuis, 560 U.S. at 384, and that "Miranda rights can . . . be waived through means less formal than a typical waiver on the record in a courtroom." Id. at 385. The Court further explained that, "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Id.

In this case, Livingston has not cited any Supreme Court case holding that a suspect must be warned anew when he is questioned within an hour of waiving his Miranda rights. This Court's research has not disclosed such a holding and Livingston's position is inconsistent with the holding of Berghuis. In Berghuis, the Supreme Court reversed the Sixth

Circuit's grant of habeas relief under § 2254 where the circuit had found that Thompkins' incriminating statement had been elicited in violation of <u>Miranda</u> where, after being given the <u>Miranda</u> warnings, Thompkins essentially sat in an interrogation room for almost three hours without speaking.  When the police finally asked him if he believed in God, he responded "Yes." The officer asked if he prayed to God, and he again responded "Yes," and if he prayed to God to forgive him for shooting that boy down and he answered "Yes."  <u>Id.</u> at 375-76.  The Supreme Court held that habeas relief was improper because the state court's decision to admit the statements was not contrary to, or an unreasonable application of, Supreme Court holdings.

Here, the New Jersey courts found that the second written statement was voluntarily and knowingly made because Livingston had knowingly and voluntarily waived his <u>Miranda</u> rights 45 minutes earlier and, beyond the passage of a short time, there was no intervening event that lessened the continuing effectiveness of the waiver.  This Court is required to presume the correctness of these factual findings and Livingston has not rebutted them by clear and convincing evidence.  The New Jersey court was not unreasonable in its application of clearly established Supreme Court holdings when it concluded that the admission of Livingston's second statement did not violate his

right against self-incrimination.  Livingston is not entitled to
habeas relief on Ground One.

B.   Due Process:  Victim's Juvenile Record (Ground Two)

In Ground Two, Livingston asserts that he was denied a fair
trial by the prosecutor's failure to provide in discovery the
victim's juvenile record which included several arrests and two
convictions.  Livingston contends that the victim's juvenile
record would have supported his argument that the victim was the
aggressor and that Livingston killed him in self defense.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), in separate
trials, Brady and a companion named Boblit were found guilty of
first-degree murder and sentenced to death.  Brady's trial took
place first.  Brady testified that he had participated in the
crime but Boblit was the killer.  Brady's attorney asked the
jury to return a verdict of first-degree murder without capital
punishment.  After the trial, Brady learned that one of the
statements Boblit had made to the police was not turned over to
the defense during discovery, even though the defense had
requested examination of Boblit's statements.  In the withheld
statement, Boblit admitted that he had killed the victim.  Brady
moved for a new trial.  The Maryland Court of Appeals held that
suppression of this confession by the prosecution denied due
process.  The court remanded for a retrial on the question of
punishment but not guilt, since nothing in the suppressed

confession could have reduced the offense below first-degree murder.  On certiorari, the Supreme Court affirmed, holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87; see also Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150 (1972).  The Supreme Court also held that Brady was not denied due process by the restriction of his new trial to the question of punishment. The Supreme Court read the appellate court's statement that nothing in the suppressed confession could have reduced the offense below first-degree murder "as a ruling on the admissibility of the confession on the issue of innocence or guilt."  Brady, 373 U.S. at 90.  The Court reasoned that, because state courts are the "final expositors under our federal regime" of state evidentiary questions, id., the denial of a new trial on the question of guilt did not deprive Brady of due process or equal protection.

Livingston raised his Brady claim before the trial court in a post-verdict motion and before the Appellate Division on direct appeal, arguing that the failure to disclose this information violated Brady.  The Appellate Division rejected this ground for the reasons expressed by the trial court.  (ECF

No. 1-1 at 17-18.)  The trial court ruled that "[e]vidence of
the violent or aggressive character of the victim of an
assaultive crime may be admissible on behalf of a criminal
defendant to corroborate the defendant's account of the
encounter if he claims that the victim was the aggressor,
regardless of whether he then knew of that trait," but the
criminal record of Livingston's victim was not admissible
because "none of the victim's arrests or charges on the juvenile
petitions were for crimes of violence, assaultive behavior or
offenses against the person."  (ECF No. 17-8 at 11-12.)
Accordingly, the New Jersey courts found that there was no Brady
violation because the "failure of the State to provide this
information would not have resulted in the discovery of any
competent, admissible evidence on behalf of the defendant's
claim of self-defense."  Id. at 12.

The ruling of the New Jersey courts is consistent with
Brady.  As explained above, Brady held that there was no due
process violation with respect to the conviction where the state
court found that the evidence which was not disclosed in
discovery was not admissible on the issue of guilt.  See Brady,
373 U.S. at 90.  The New Jersey court was not unreasonable in
its application of Brady or other clearly established federal
law when it held that the failure to reveal the victim's

juvenile record in discovery did not violate due process.  Thus, habeas relief is not warranted on Ground Two.

C.   <u>Due Process:  Instructions (Grounds Three and Five)</u>

In Ground Three, Livingston asserts that the trial court's instruction on the causation element of felony murder was inaccurate and confusing.  As factual support, Livingston states the first portion of the felony murder instruction "was incorrect because it did not set forth the requirement that the jury find a causal, or 'but for' relationship between the underlying crime of robbery and the killing." (ECF No. 1 at 11.) Livingston asserts that the trial court "never advised the jury that the defendant could be acquitted of felony murder if the jury had a reasonable doubt about whether the defendant's decision to take the money, as he testified, [was] an afterthought."  <u>Id.</u>

In Ground Five, Livingston asserts that the instruction on imperfect self defense was confusing and prevented the jury from properly considering the significance of the fact that the incident occurred in Livingston's home.  As factual support, he alleges that the trial judge gave the model jury charges on three kinds of self defense, as requested by defense counsel, but confused the jury by failing to "relat[e] the elements of the various kinds of self-defense to the facts as presented by the evidence."  (ECF No. 1 at 15.)

In Waddington v. Sarausad, 555 U.S. 179 (2009), the Supreme Court rejected a habeas petitioner's claim that an accomplice liability instruction violated due process. The Court summarized the law regarding the constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt . . . . In making this determination, the jury instruction may not be judged in artificial isolation, "but must be considered in the context of the instructions as a whole and the trial record. Because it is not enough that there is some slight possibility that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

Waddington, 555 U.S. at 190-191 (citations and internal quotation marks omitted).

Moreover, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v McGuire, 502 U.S. 62, 71-72 (1991); see also Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").

Livingston challenged the adequacy of these instructions on direct appeal.  The Appellate Division rejected the challenge to the causation element of felony murder as without merit:

> The judge's explanation of the law was correct in all respects.  Contrary to defendant's suggestion, the judge clearly told the jury that "if you find that theft occurred, that is not adequate for a felony murder.  A theft is not a predicate offense for . . . purposes of the felony murder statute."  The charge accorded with the applicable model jury charge . . . .  In this case, a detailed reference to the facts was unnecessary.  The issue was not complex.  Either defendant took the victim's money as an afterthought, in which case there would have been no basis for felony murder, or he formed the intent to steal before or while he was beating the victim to death, in which case felony murder would have been established.

(ECF No. 1-1 at 18-19.)

Similarly, the Appellate Division rejected Livingston's challenge to the self defense instruction:

> In the instant case, all three self-defense charges were appropriate.  Both sides presented evidence concerning the victim's status on the premises; it was for the jury to decide whether Morris Lewis was an intruder.  Therefore, the court properly charged the jury on both general self-defense and intruder self-defense.  Defendant has not shown how failing to tailor the facts to the charge has misle[]d the jury, and in fact, the trial judge did make certain portions of the charge fact specific.  In this case, failure to mold the facts to the jury charge is not reversible error.

(ECF No. 1-1 at 21.)

Here, this Court must presume the correctness of the Appellate Division's finding that the trial judge instructed the jury that theft is not a predicate offense for felony murder.

See 28 U.S.C. § 2254(e)(1).  Even if the instructions may have been somewhat confusing, to show a due process violation required Livingston to show that there was a reasonable likelihood that the jury applied the challenged instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  See Waddington, 555 U.S. at 191; Estelle, 502 U.S. at 72.  Livingston has failed to make this showing.  Accordingly, the New Jersey court did not unreasonably apply clearly established Supreme Court precedent when it concluded that the challenged instructions did not violate due process.  See Williams v. Beard, 637 F. 3d 195, 223-25 (3d Cir. 2011) (rejecting § 2254 claim that the instruction unconstitutionally broadened the scope of accomplice liability because petitioner failed to show that there was a reasonable likelihood that the jury applied the instruction in a manner that relieved the state of its burden of proving every element beyond a reasonable doubt); Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) ("[T]he jury instructions on justification . . . would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action.")  He is, therefore, not entitled to habeas relief on Grounds Three and Five.

D.   <u>Sufficiency of Evidence</u>

In Ground Four, Livingston asserts that the state failed to prove beyond a reasonable doubt the offense of robbery and failed to prove that the killing occurred in the course of a robbery.  As factual support, Livingston alleges that "[t]here was no evidence which would have supported a finding beyond a reasonable doubt that the defendant's purpose was to rob Lewis. There was evidence of a theft, and there was evidence of a killing, but there was no evidence from which the jury could reasonably have found the use of force or threat, since the victim was unconscious or dead by the time the intent to steal was formed."  (ECF No. 1 at 13.)

To be sure, in 1970 the Supreme Court held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [one] is charged."  <u>In re</u> <u>Winship</u>, 397 U.S. 358, 364 (1970).  <u>Winship</u>'s rationale requires that the jury be instructed on the necessity of proof beyond a reasonable doubt.  <u>See</u> <u>Cool v. United States</u>, 409 U.S. 100, 104 (1972).

A sufficiency of the evidence claim is governed by <u>Jackson</u> <u>v. Virginia</u>, 443 U.S. 307, 318 (1979).  "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found

that upon the record evidence adduced at the trial no rational
trier of fact could have found proof of guilt beyond a
reasonable doubt." Id. at 324; accord Coleman v. Johnson, 132
S.Ct. 2060, 2064 (2012) (per curiam); Cavazos v. Smith, 132
S.Ct. 2 (2011) (per curiam); McDaniel v. Brown, 558 U.S. 120,
121 (2010) (per curiam). The Supreme Court has emphasized that
"it is the responsibility of the jury - not the court - to
decide what conclusions should be drawn from evidence admitted
at trial." Cavazos, 132 S.Ct. at 3.  In determining the
sufficiency of the evidence, a reviewing court "faced with a
record of historical facts that supports conflicting inferences
must presume - even if it does not affirmatively appear in the
record - that the trier of fact resolved any such conflicts in
favor of the prosecution, and must defer to that resolution."
McDaniel, 130 S. Ct. at 673 (citation and internal quotation
marks omitted); see also House v. Bell, 547 U.S. 518, 538 (2006)
("When confronted with a challenge based on trial evidence,
courts presume the jury resolved evidentiary disputes reasonably
so long as sufficient evidence supports the verdict").  The
sufficiency of the evidence standard "does not permit a court to
make its own subjective determination of guilt or innocence."
Jackson at 320, n. 13.

     Livingston argued on direct appeal that a rational trier of
fact could not have found him guilty beyond a reasonable doubt

of robbery because "[t]he State did not, and could not prove
that the defendant beat Lewis in the course of or in an attempt
to take his money.  There was no evidence in this case which
would have supported a finding beyond a reasonable doubt that
the defendant's purpose was to rob."  (ECF No. 17-11 at 38.)  In
addition, he argued that, since the State failed to prove that
the intent to commit robbery was formed at some point before
Lewis was down and dying, the evidence was insufficient to
convict Livingston of felony murder.  The Appellate Division
affirmed the trial court's rejection of these arguments as
follows:

> Defendant's argument appears to be that since he
> testified that the theft was an afterthought
> unconnected with the beating, a contrary verdict is
> unsupportable.  But given his own testimony that
> immediately after the victim had been rendered
> helpless and lay dying, the first thing he did was to
> search the victim and take his money, coupled with his
> attempts to coverup his crime by rearranging the scene
> and thereafter lying to the police, the jury was fully
> justified in finding that he had formed the intent to
> steal before or during the beating that resulted in
> the victim's death.

(ECF No. 1-1 at 19-20.)

Under the _Jackson_ standard, this Court must presume that the
jury was convinced that Livingston's intent to steal from Lewis
preceded or existed contemporaneously with the commission of the
homicide, "and the only question under _Jackson_ is whether that
finding was so insupportable as to fall below the threshold of

bare rationality.  The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d)." Coleman, 132 S.Ct. at 2065.  It was up to the jury, not this Court, to consider the point in time when Livingston formed the intent to steal and to determine the veracity of Livingston's testimony that he stole the money from Lewis as an afterthought.  Affording due respect to the role of the jury and the New Jersey courts under § 2254(d), this Court finds that the evidence "was not nearly sparse enough to sustain a due process challenge under Jackson." Id.  Livingston is not entitled to habeas relief on Ground Four.  See Eley v. Erickson, 712 F.3d 837, 847–853 (3d Cir. 2013) (holding that state courts' adjudication of sufficiency of evidence claims was not contrary to, or an unreasonable application of Jackson); cf. Government of Virgin Islands v. Vanterpool, 767 F.3d 157 (3d Cir. 2014) (rejecting claim that there was insufficient evidence to permit the jury to find that Vanterpool had the requisite intent).

E.   Inconsistency of Verdicts (Ground Six)

In Ground Six, Livingston asserts that the jury's guilty verdict on passion-provocation manslaughter was inconsistent with finding him guilty of felony murder.  As factual support, he alleges that "[t]he only, and clear, explanation for the inconsistent verdict of felony murder and passion provocation manslaughter is that the jury failed to understand or failed to

find that the death in the case of felony murder was incident to
the robbery." (ECF No. 1 at 17.)

Livingston raised this claim on direct appeal, relying on
State v. Gray, 147 N.J. 4 (1996). The Appellate Division found
that Gray did not apply because there was no inconsistency in
the verdicts:

> [t]he inconsistency arose in [Gray] because the jury
> found defendant not guilty of the underlying felony
> and yet guilty of felony murder. Here, defendant was
> found guilty of the underlying felony of robbery.
> Therefore, there was no inconsistency. Defendant's
> argument appears to be premised on the idea that one
> cannot form the intent to steal while one is
> impassioned. That odd proposition is not supported by
> any authority, and it makes no sense.

(ECF No. 1-1 at 21-22)

This Court need not consider the nature of the alleged
inconsistency because the Supreme Court has not held that
inconsistent verdicts violate the Constitution. In 1932, the
Supreme Court held that a federal criminal defendant convicted
by a jury on one count could not prevail in a challenge to that
conviction on the ground that it was inconsistent with the
jury's acquittal on another count. See Dunn v. United States,
284 U.S. 390, 393 (1932). "Consistency in the verdict is not
necessary." Id. at 393. The Court noted that, where logically
inconsistent verdicts have been reached, "[t]he most that can be
said . . . is that the verdict shows that either in the
acquittal or the conviction the jury did not speak their real

conclusions, but that does not show that they were not convinced of the defendant's guilt." Id. at 393.

In Harris v. Rivera, 454 U.S. 339 (1981), a § 2254 case, the Supreme Court reversed Second Circuit's determination that, because the conviction of one co-defendant at a bench trial was facially inconsistent with the acquittal of another, the Due Process Clause did not permit the conviction to stand unless the trial court demonstrated that the conviction rested on a rational basis. Noting that Dunn established "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons," id. at 346, the Supreme Court held that "there is no federal requirement that a state trial judge explain his reasons for acquitting a defendant in a state criminal trial; even if the acquittal rests on an improper ground, that error would not create a constitutional defect in a guilty verdict that is supported by sufficient evidence and is the product of a fair trial." Id. at 344.

In United States v. Powell, 469 U.S. 57 (1984), the Supreme Court applied Dunn to reject a defendant's challenge to a federal conviction on the ground that the jury inconsistently convicted him on a conspiracy charge but acquitted him on the underlying overt act. The Court cited Harris v. Rivera for the proposition "that a defendant could not obtain relief by writ of habeas corpus on the basis of inconsistent verdicts rendered

after a state bench trial," id. at 63, because "nothing in the Constitution would require such a protection." Id. at 65. Although the Powell Court opined in a footnote that "[n]othing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other," id. at 69 n.8, this Court's research reveals no Supreme Court precedent holding that this sort of inconsistent verdict violates the Constitution. See Rodriguez v. Rozum, 535 Fed. App'x 125, 131 (3d Cir. 2013) ("The fact of a potentially inconsistent verdict does not affect our analysis, and does not affect the constitutionality of the conviction . . . . Therefore, Rodriguez's robbery acquittal does not preclude us from considering record evidence establishing his involvement in the robbery when we are reviewing the sufficiency of the evidence vis-à-vis his felony murder conviction.")

Livingston has not shown that New Jersey courts' adjudication of his inconsistent verdict claim was based on an unreasonable determination of the facts in light of the evidence presented, nor has he established that the state courts unreasonably applied clearly established Supreme Court precedent. Accordingly, he is not entitled to habeas relief on Ground Six.

F.   Due Process:  Prosecutorial Misconduct (Grounds Seven,
Thirteen)

In Ground Seven, Livingston asserts that, in the absence of
a curative instruction, the prosecutor's speculation in his
closing argument that Livingston and the victim may have had a
dispute about drugs constituted reversible error.  As factual
support, he alleges that, although there was no evidence of a
drug dispute, the prosecutor told the jury five times that
Livingston and the victim may have had a dispute about drugs
before the altercation.  In Ground Thirteen, Livingston again
claims that the prosecutor engaged in misconduct when he
speculated that the altercation was preceded by a drug dispute.

"The 'clearly established Federal law' relevant [to a
prosecutorial misconduct claim] is [the Supreme Court's]
decision in Darden v. Wainwright, 477 U.S. 168 . . . (1986),
which explained that a prosecutor's improper comments will be
held to violate the Constitution only if they 'so infected the
trial with unfairness as to make the resulting conviction a
denial of due process.'"  Parker v. Matthews, 132 S.Ct. 2148,
2153 (2012) (quoting Darden at 181 and Donnelly v.
DeChristoforo, 416 U.S. 637, 643 (1974)).  It is not enough to
show that the prosecutor's conduct was universally condemned.
See Darden at 181.  The quantum or weight of the evidence is
crucial to determining whether the prosecutor's statements

32

before the jury were so prejudicial as to result in a denial of due process.  Id. at 182; Donnelly, 416 U.S. at 644; accord Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

Livingston argued on direct appeal that the trial judge erred in failing to instruct the jury with respect to the prosecutor's suggestion in summation that Livingston and the victim may have been fighting over drugs.  The Appellate Division rejected the argument as follows:

> Misconduct by a prosecutor does not constitute reversible error unless it was such that it deprived defendant of a fair trial.  We do not perceive the prosecutor's comment as improper even though the inference he suggested was attenuated.  Moreover, even if it were improper, it did not deprive defendant of a fair trial, and it did not require corrective action by the trial judge.

(ECF No. 1-1 at 23) (citation and internal quotation marks omitted).

The Appellate Division was not unreasonable in its application of Darden, Donnelly or other Supreme Court precedent when it concluded that the prosecutor's comments did not so infect the trial with unfairness as to make the conviction a denial of due process.  Livingston is not entitled to habeas relief on Grounds Seven and Thirteen.

G.   Prosecutorial Vindictiveness (Ground Eight)

In Ground Eight, Livingston asserts that his convictions should be reversed because the trial court erred in denying his

pre-trial motion to dismiss the superseding indictment on the basis of prosecutorial vindictiveness.  As factual support, he alleges that he was initially indicted on first-degree aggravated manslaughter and first-degree armed robbery, but during plea negotiations "the State threatened the Defendant 'that if he did not accept their plea offer that they were going to se[e]k another indictment against him.'  When the Defendant exercised his constitutional right to refuse the plea offer . . , the Stat[e] reindicted him."  (ECF No. 1 at 20.)  The superseding indictment charged Livingston with murder, felony murder, two counts of robbery, and two weapons charges.

The Supreme Court precedent governing this ground is Bordenkircher v. Hayes, 434 U.S. 357 (1978).  In Bordenkircher, the Court determined that the Due Process Clause is not violated "when a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged."  Id. at 358.  As Bordenkircher explained:

> [T]he plea may have been induced by promises of a
> recommendation of a lenient sentence or a reduction of
> charges, and thus by fear of the possibility of a
> greater penalty upon conviction after a trial . . .
> While confronting a defendant with the risk of more
> severe punishment clearly may have a discouraging
> effect on the defendant's assertion of his trial
> rights, the imposition of these difficult choices [is]
> an inevitable – and permissible – attribute of any
> legitimate system which tolerates and encourages the
> negotiation of pleas.

Id. at 363 (citations and internal quotation marks omitted).

Livingston raised this claim in a post-judgment motion; the trial court rejected it based on Bordenkircher and the Appellate Division rejected it for the reasons expressed by the trial court.  The New Jersey courts reasonably applied Supreme Court precedent in finding that the prosecutor's obtaining the threatened superseding indictment did not violate due process. Because the New Jersey courts' adjudication of the prosecutorial vindictiveness claim was not based on an unreasonable determination of the facts in light of the evidence presented, and did not result in a decision that was contrary to or an unreasonable application of Bordenkircher or other Supreme Court precedent, Livingston is not entitled to habeas relief on Ground Eight.  See Jordan v. Epps, 756 F.3d 395 (5th Cir. 2014), cert. denied, 135 S.Ct. 2647 (2015) (denying a certificate of appealability under Bordenkircher on habeas claim of prosecutorial vindictiveness where the prosecutor refused to make a plea agreement for a sentence of life in prison, rather that the death penalty, because the petitioner had previously violated his agreement that he would not appeal his plea and sentence of life in prison without the possibility of parole).

H.   Sufficiency of the Evidence (Ground Nine)

In Ground Nine, Livingston asserts that "the State failed to prove beyond a reasonable doubt the elements of the weapons offenses" and erred in failing to acquit him on those counts. (ECF No. 1 at 22.)  As factual support, he states that the crimes of possession of a weapon for an unlawful purpose and possession of a weapon for a purpose not manifestly appropriate require proof of the possessor's illegal intent in the possession, but "[t]he State produced no evidence that the defendant possessed the baseball bat for any purpose other than the legitimate purpose of self defense [which] is not transformed into an unlawful purpose, even when the use of the weapon changes, as during an altercation, so long as the intent continues to be lawful."  Id.  Livingston further maintains that the trial judge improperly failed to instruct the jury that the finding of an unlawful use does not prove beyond a reasonable doubt that his purpose in arming himself with a baseball bat was unlawful.

Livingston raised this ground on direct appeal.  The Appellate Division rejected it as follows:

> Defendant contends under Point IX that the State
> failed to prove the elements of the weapons offenses,
> but his argument does not warrant comment since it is
> premised on the false assumption that the State failed
> to disprove the defense of self-defense.  Although
> defendant criticizes the jury instructions on these
> charges, they were proper in all respects.
> Furthermore, since these charges were merged,
> defendant cannot, and does not even attempt to, show

> how any of the errors he alleges might be considered
> on appeal as prejudicing his case.

(ECF No. 1-1 at 25.)

Although Livingston labels this claim as an unconstitutional failure to prove the elements of the weapons offenses, the substance of the claim is that he disagrees with the elements of the crimes, as determined by the Appellate Division.  Any error of state law regarding the elements of the weapons offenses or self defense cannot form the basis for habeas relief because habeas relief is not available for errors of state law.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief.").  Livingston has not shown that the New Jersey courts' adjudication of this ground is contrary to, or an unreasonable application of Supreme Court precedent.  He is not entitled to habeas relief on Ground Nine.

I.   Failure to Admit Defense Evidence (Grounds Ten and Eleven)

In Ground Ten, Livingston asserts that "the trial court committed reversible error by refusing to permit the defense to place in evidence the fact that the State originally did not

charge the defendant with murder and that it took the State
nearly two years to decide to bring these charges against the
defendant." (ECF No. 1 at 24.)  As factual support, he asserts
that the trial court barred the defense from eliciting testimony
demonstrating that the State did not initially charge Livingston
with murder and that for two years the State was satisfied that
aggravated manslaughter and armed robbery were the appropriate
offenses.  He maintains that, if admitted, this evidence would
have shown that the prosecutor did not think that the incident
warranted a murder charge.  In Ground Eleven, he asserts that
"the inability of the defendant to present medical testimony
concerning his physical condition prejudiced his case." (ECF
No. 1 at 25.)  As factual support, Livingston alleges that the
orthopedic specialist who had performed surgery on him was not
available to testify during trial and that the court's failure
to accommodate this witness deprived him of a fair trial.  He
asserts that the doctor's testimony regarding his physical
limitations was critical to his state of mind at the time of the
incident.

Livingston raised Grounds Ten and Eleven on direct appeal,
but the argument on each ground was less than one page;
Livingston cited no case law but argued simply that the absence
of the evidence prejudiced his case.  The Appellate Division

found that the issues were not of "sufficient substance to require further comment." (ECF No. 1-1 at 25.)

Livingston does not claim in his § 2254 Petition, nor did he claim before the New Jersey courts, that his inability to call the orthopedic surgeon as a witness violated the United States Constitution. Nor does he claim that the failure to allow testimony concerning the substance of the initial indictment and the timing of the superseding indictment violates the Constitution. Rather, as explained above, he claims in his § 2254 Petition that the trial judge committed reversible errors and that the cited errors prejudiced him. This Court does not have habeas jurisdiction over state claims. See 28 U.S.C. § 2254(a); Engle, 456 U.S. at 120 n.19 ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."). In addition, this Court lacks the power to transform a ground asserting a violation of state law into a ground raising a violation of the federal Constitution.[4] Similarly, the Court cannot consider a federal claim that evident from the facts of the case that is not asserted in the

---

[4] See Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

petition as a ground.[5]  Because Grounds Ten and Eleven do not

assert violation of federal law, this Court lacks jurisdiction

to entertain them.

Even if this Court were to entertain Grounds Ten and Eleven

as due process claims, habeas relief would not be warranted.  To

prevail on a due process claim, Livingston "must prove that he

was deprived of 'fundamental elements of fairness in [his]

criminal trial." Glenn v. Wynder, 743 F.3d 402, 407 (3d Cir.

2014) (quoting Riggins v. Nevada, 504 U.S. 127, 149 (1992))

(citation and internal quotation marks omitted).  The Supreme

Court has "defined the category of infractions that violate

'fundamental fairness' very narrowly, based on the recognition

that, beyond the specific guarantees enumerated in the Bill of

Rights, the Due Process Clause has limited application." Medina

v. California, 505 U.S. 437, 443 (1992).  "In order to satisfy

_____

[5] See Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where
habeas petition raised claim that the police had elicited
petitioner's statements without satisfying Miranda, the district
court erred when it "went beyond the habeas petition and found
the statements [petitioner] made after receiving the Miranda
warnings to be involuntary under due process criteria"); Baker
v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition
contains ground asserting the ineffective assistance of counsel
during plea negotiations and trial, the district court may not
consider ground, evident from the facts but not raised in the
petition, that counsel was ineffective by failing to advise
petitioner that he faced a longer sentence by appealing the
conviction).

due process, [defendant's] trial must have been fair; it need
not have been perfect." Glenn, 743 F.3d at 407 (citing United
States v. Hasting, 461 U.S. 499, 508 (1983)).  And while "the
Constitution guarantees criminal defendants a meaningful
opportunity to present a complete defense," Holmes v. South
Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky,
476 U.S. 683, 690 (1986)), the Constitution prohibits only "the
exclusion of defense evidence under rules that serve no
legitimate purpose or that are disproportionate to the ends that
they are asserted to promote[.]" Holmes, 547 U.S. at 326.  The
Constitution permits judges to "exclude evidence that is
repetitive . . . , only marginally relevant or poses an undue
risk of harassment, prejudice [or] confusion of the issues."
Crane, 476 U.S. at 689-690; see also Taylor v. Illinois, 484
U.S. 400, 410 (1988) ("The accused does not have an unfettered
right to offer testimony that is incompetent, privileged, or
otherwise inadmissible under standard rules of evidence").

Livingston has not shown that the New Jersey courts'
rejection of Grounds Ten and Eleven was contrary to, or an
unreasonable application of, Supreme Court precedent.  Thus, he
is not entitled to habeas relief on those grounds.

J.   Ineffective Assistance of Counsel (Ground Twelve)

In Ground Twelve, Livingston asserts that trial counsel was
constitutionally ineffective in failing to adequately

communicate with him, failing to move to sever, failing to
object to admission of the overly graphic autopsy photographs,
failing to procure the testimony of Livingston's orthopedic
surgeon who would have testified that Livingston had reason to
fear his own excessive bleeding, failing to investigate and
produce witnesses to testify about the violent reputation of the
victim, failing to timely object to the prosecutor's improper
remarks in summation, failing to object to the instruction, and
failing to explain the consequences of refusing the plea offer
and being convicted at trial.  Livingston also claims that
appellate counsel was ineffective in failing to raise a winning
issue and failing to appeal the order denying Livingston's
motion for acquittal and for a new trial based on insufficiency
of the evidence.

The Sixth Amendment guarantees the accused the "right . . .
to have the Assistance of Counsel for his defense." U.S. Const.
amend. VI.  A claim that counsel's assistance was so defective
as to require reversal of a conviction has two components, both
of which must be satisfied.  See Strickland v. Washington, 466
U.S. 668, 687 (1984).  First, the defendant must "show that
counsel's representation fell below an objective standard of
reasonableness." Id. at 687-88.  To meet this prong, a
"convicted defendant making a claim of ineffective assistance
must identify the acts or omissions of counsel that are alleged

not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." Id., 134 S.Ct. at 1083.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 1089 (quoting Strickland, 466 U.S. at 695).

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396.  The ineffective assistance of counsel standard of Strickland applies to a claim that appellate counsel was ineffective.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

(1) Failure to Investigate and Communicate

43

Livingston argued on appeal from the order denying his post-conviction relief petition that counsel failed to adequately consult with him and to lean of witnesses who could have testified about the violent reputation of the victim. (ECF No. 33-1 at 31-32.)   The Appellate Division did not discuss this issue and relied on the trial court's findings.   The trial court found that the allegations were too speculative to satisfy the deficient performance or the prejudice prongs:

> Petitioner . . . does not allege with any specificity how his trial counsel failed to communicate with him or at what point he sought more contact than he had with his attorney.   Petitioner alleges the fruit of further contact would have been witnesses who may have testified to the victim's violent reputation. Presumably[,] Petitioner intends to argue that were those witnesses to testify, the jury may have been more likely to find Petitioner's attack on the deceased reasonable as he may have been that much more in fear for his safety due to the victim's purported violent reputation.   This allegation rests on so many contingencies that it could not be said to satisfy either prong of a <u>Strickland</u> analysis.

(ECF No. 33-4 at 35-36.)

The trial court properly considered the absence of any allegation that Livingston sought additional contact with his attorney in order to convey information concerning the victim's violent reputation.   "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.   Counsel's actions are usually based, quite properly . . , on information supplied by the defendant.

In particular, what investigation decisions are reasonable depends critically on such information." Strickland, 466 U.S. at 691.  This Court notes that Livingston testified at his trial and, if he indeed knew of the victim's history of violent actions, he could have testified about this knowledge and that it caused him to reasonably fear for his own safety at the time of the incident.  In addition, Livingston does not assert now nor did he assert in his brief on appeal from the denial of post-conviction relief that before the trial he knew the names of the witnesses who could have testified as to the victim's history of violent actions.   "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

In this case, Livingston did not present facts to the New Jersey courts showing that counsel had any reason to investigate the victim's violent reputation or tendencies or that Livingston even knew of the victim's reputation at the time of the incident and attempted to tell counsel.  The New Jersey court was not unreasonable in its application of Strickland when it concluded that counsel was not constitutionally deficient in failing to

consult with Livingston and investigate the victim's violent reputation or tendencies.  Livingston is not entitled to habeas relief on this claim of Ground Twelve.

(2) Failure to Seek Severance

On post-conviction relief Livingston claimed that counsel was ineffective for failing to move to sever the robbery from the murder charge on the ground that the crimes did not have a sufficient nexus.  The trial court found that, in light of Livingston's admission that "he took money from the victim immediately after the attack that resulted in the victim's death[, t]here is no stronger nexus for two crimes [and] counsel committed no error[.]"  (ECF No. 33-4 at 36.)   Livingston is not entitled to habeas relief on this claim because he has not shown that the trial court unreasonably determined the facts in light of the evidence in the record or unreasonably applied Strickland.

(3) Failure to Object to Admission of Autopsy Photos

Livingston argued on post-conviction relief that counsel was deficient in failing to object to the admission of the autopsy photographs on the ground that they were more prejudicial than probative.  The trial court determined that counsel was not constitutionally deficient:  "While counsel may have stipulated to the proof that the State intended to offer so as to satisfy the required elements, his choice not to is not an

46

error." (ECF No. 33-4 at 36.)  In addition, the trial court
found that Livingston did not show "that defense counsel's
failure to object to autopsy photographs had a prejudicial
effect on the outcome of his trial." Id.  The trial court's
rationale for rejecting this claim is consistent with Strickland
and he is not entitled to habeas relief on this claim in Ground
Twelve.

    (4) Failure to Present Orthopedic Surgeon as Witness

    Livingston argued on post-conviction relief that counsel
was constitutionally deficient in failing to call Dr. Davne,
Livingston's orthopedic surgeon, as a witness.  The trial court
found that counsel was not deficient:

> Petitioner next attacks trial counsel's failure to
> procure the presence of Dr. Sanford Davne, who would
> have testified about Petitioner's various ailments,
> treatments that he had received, and [that] the
> Petitioner feared [that] excessive bleeding would
> occur in a fight, causing him to overreact in
> defending himself.  When Dr. Davne was unavailable for
> several days during trial, defense counsel elected to
> not call him, but to instead read an extended
> stipulation into the record regarding Petitioner's
> medical conditions, which was met with no objection
> from the State.  As well, Petitioner testified to his
> medical conditions on direct.  Again, this issue falls
> within the bounds of tactical decision-making by
> defense counsel.  The absence of live testimony
> regarding Petitioner's medical conditions was part of
> his direct appeal and the Appellate Division found the
> claim so meritless that it did not warrant discussion.
> This was not an error on the part of defense counsel,
> but a deliberate decision made during trial.

(ECF No. 33-4 at 37.)

In establishing an ineffective assistance of counsel claim, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689 (citations and internal quotation marks omitted).  The trial court's determination that counsel's use of a stipulation instead of testimony was not unreasonable in light of the evidence presented.  See 28 U.S.C. § 2254(d)(2). Nor did the trial court unreasonably apply Strickland when it concluded that counsel was not deficient.

(5) Failure to Present Evidence Showing the Victim's Violent Tendencies

Livingston raised this claim in his post-conviction relief petition and on appeal from the order denying post conviction relief.  The Appellate Division held that Livingston had not shown deficient performance or prejudice:

> One of the alleged deficiencies was counsel's failure to consult with defendant and to investigate, which supposedly may have led to the discovery of witnesses, who may have testified to the victim's violent tendencies, which in turn may have caused the jury to credit his defense of self-defense.  In support of this claim, defendant submitted reports dated August 2008 from two investigators identifying two individuals who allegedly knew of the victim's violent reputation.  Defendant, however, has offered no basis whatsoever to find that counsel knew or should have known the identity of these persons at time of trial

48

or that these possible witnesses would be willing to testify to the information supposedly related to defense investigators over ten years after defendant's conviction and contained in an unverified report. Moreover, there is no reason to assume that the jury would have returned a different result based on what defendant now speculates their testimony would have been.

Livingston, 2011 WL 5828502 at *4.

This Court must presume the correctness of the Appellate Division's finding that Livingston did not show that counsel knew or should have known the identity of the persons with evidence of the victim's violent tendencies at time of trial or that these possible witnesses would be willing to testify to the information supposedly related to defense investigators over ten years after defendant's conviction.  See 28 U.S.C. § 2254(e)(1). Given these factual findings, the New Jersey court was not unreasonable in its application of Strickland when it concluded that counsel was not deficient in failing to call these witnesses.  Accordingly, Livingston is not entitled to habeas relief on this claim in  Ground Twelve.

(6) Failing to Object to Prosecutor's Remarks in Summation

Livingston argued on post-conviction relief that counsel was deficient in failing to object to the prosecutor's remarks in summation that the incident might have resulted from a disagreement about drugs.  The Appellate Division did not discuss this ground on appeal from the denial of post-conviction

relief.  The post-conviction court noted that, although an
objection "may have been sustained at trial," on direct appeal
the Appellate Division agreed with the trial court that "the
comment was so brief as to have not even required an instruction
to disregard."  (ECF No. 33-4 at 38.)  The post-conviction court
also found that, "even if there was error by trial counsel,
there was no prejudice to Petitioner."  Id.

On direct appeal, Livingston argued that the trial judge
erred in failing to charge the jury regarding the prosecutor's
comment.  The Appellate Division noted that the prosecutor's

> remarks did not suggest that the prosecutor had
> information bearing on this subject other than that
> presented at trial.  The evidence at trial was that
> the victim had drugs in his body and that defendant
> denied that he and the victim had used drugs together.
> The prosecutor argued that since defendant had told so
> many lies perhaps he was lying about not sharing drugs
> with the victim and perhaps he lied about not killing
> the victim for drugs.

(ECF No. 1-1 at 22.)

Significantly, the Appellate Division found on direct
appeal that defense counsel did object to the prosecutor's
remarks at the conclusion of the prosecutor's summation on the
ground that there was no evidence of drugs on the person of
defendant or the victim, or in the premises.  The Appellate
Division noted that the trial judge had found the remark
"incidental," "minor," "ancillary," and "harmless," and ruled
that the court was "not going to instruct the jury any further

with respect to that.  Your objection is noted." Id. at 23.
The Appellate Division did not find the "the prosecutor's
comment [to be] improper even though the inference he suggested
was attenuated.  Moreover, even if it were improper, it did not
deprive defendant of a fair trial, and it did not require
corrective action by the trial judge." Id.

This Court is required to presume the correctness of the
Appellate Division's finding on direct appeal that defense
counsel objected to the prosecutor's comment as soon as the
prosecutor concluded his closing, as Livingston has not rebutted
the finding by clear and convincing evidence.  See 28 U.S.C. §
2254(e)(1).  As defense counsel did object to the prosecutor's
comments, the New Jersey court was not unreasonable in its
application of Strickland when it concluded that counsel's
failure to object (sooner) was not constitutionally deficient.

(7) Failing to Object to Felony Murder Instruction

Livingston argued on post-conviction relief that
counsel was ineffective for failing to object to the felony
murder instruction.  The post-conviction court found that
counsel was not deficient because on direct appeal the
Appellate Division rejected Livingston's challenge to the
felony murder instruction.  As explained previously, the
Appellate Division held that "[t]he judge's explanation of
the law was correct in all respects" and that "the judge

clearly told the jury" that theft is not a predicate

offense for felony murder.  (ECF No. 1-1 at 18.)

Because "counsel cannot be deemed ineffective for

failing to raise a meritless claim," the New Jersey court

was not unreasonable in its application of Strickland when

it concluded that counsel was not deficient in failing to

challenge the felony murder instruction.  Ross v. District

Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9

(3d Cir. 2012) (quoting Werts v. Vaughn, 228 F.3d 178, 202

(3d Cir. 2000)).  Livingston is not entitled to habeas

relief on this ineffective assistance of counsel claim in

Ground Twelve.

(8) Failing to Explain Consequences of Rejecting Plea

Livingston raised this ineffective assistance of counsel

ground in his post-conviction petition and on appeal from the

order denying the petition.  The Appellate Division rejected it

as follows:

> The other counsel deficiency claimed by defendant
> is the failure to explain the consequences of
> rejecting the State's plea offer and to advise of
> his maximum sentencing exposure on felony murder.
> Here again, defendant offers no more than a
> blanket conclusion, unsupported by the record.
> As the PCR [judge] properly found, defendant
> failed to allege any specific facts concerning
> trial counsel's explanation of the plea offer or
> the possible consequences of its rejection and
> proceeding to trial.  Given the lack of any
> evidence, much less prima facie proof, defendant

is not entitled to an evidentiary hearing on his
claim of ineffective assistance of counsel.

Livingston, 2011 WL 5828502 at *4.

This Court must presume the correctness of the Appellate
Division's finding that Livingston did not describe on post-
conviction relief what counsel told him with respect to the plea
offer or provide any facts to support his contention that
counsel's advice concerning any particular plea offer was
deficient.  Because "[a] convicted defendant making a claim of
ineffective assistance must identify the acts or omissions of
counsel that are alleged not to have been the result of
reasonable professional judgment," Strickland, 466 U.S. at 690,
and Livingston failed to factually support his ineffective
assistance of counsel during plea negotiations claim, the New
Jersey court was not unreasonable in its application of
Strickland.  Livingston is not entitled to habeas relief on this
portion of Ground Twelve.

(9) Failure to Raise Winning Issue on Appeal

Appellate counsel is not deficient simply because he or she
did not win the appeal.  See McClain v. United States, 2013 WL
1163562 (D.N.J. Mar. 19, 2013) ("Petitioner is not entitled to
claim ineffective assistance of counsel merely because he lost")
(citation omitted); see also Strickland, 466 U.S. at 689 ("It is
all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]")

(10) Failure to Argue on Appeal That the Verdict Was Against the Weight of the Evidence

Livingston argues that appellate counsel was deficient in failing to argue that the felony murder conviction was against the weight of the evidence where the robbery took place after the beating.  He raised this ground on post-conviction relief and the post-conviction relief court rejected it because "[t]he facts in the underlying case were more than enough to satisfy the elements of each crime charged and the motion for acquittal was properly denied at the time it was made at trial.  Appellate counsel's failure to raise it on direct appeal shows only that he did not intend to strain his credibility by arguing that the evidence could not sustain a verdict of guilty when it is clearly more than sufficient."  (ECF No. 33-4 at 39-40.)

Appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).  And "it is a well established principle that counsel decides which issues to pursue on appeal."  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).  The New Jersey court was not unreasonable in its application of

Strickland when it concluded that counsel's failure to raise this sufficiency of the evidence claim on direct appeal did not violate Livingston's right to the effective assistance of counsel.  Livingston is not entitled to habeas relief on this claim in Ground Twelve.

## IV.  Certificate of Appealability

Livingston has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V.  CONCLUSION

This Court denies the motion to for a 90-day extension to file a reply, dismisses the Petition with prejudice, and denies a certificate of appealability.


                                        s/ Jerome B. Simandle
                                        JEROME B. SIMANDLE
                                          Chief Judge

Dated:  **December 23, 2015**